IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

RICO MICHAEL CONNER, *Appellant.*

No. 1 CA-CR 19-0146
FILED 6-23-2020

---

Appeal from the Superior Court in Maricopa County
No.  CR2013-002730-004
The Honorable Warren J. Granville, Judge *(Retired)*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

The Law Office of Kyle T. Green P.L.L.C., Tempe
By Kyle T. Green
*Counsel for Appellant*

## OPINION

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Judge Randall M. Howe and Judge Joshua D. Rogers[1] joined.

**T H U M M A**, Judge:

¶1        Defendant Rico Michael Conner appeals his convictions and sentences for first-degree murder and armed robbery. Because he has shown no reversible error, his convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        On December 4, 2012, after dark, D.M. was shot and killed during an armed robbery outside of an adult cabaret in Phoenix. Earlier that night, C.K., a cabaret dancer, saw D.M. with a large roll of money. Just before he was killed, D.M. was sitting in his car, speaking with C.K., who was standing by his car. Two males approached the car. D.M. struggled with the men before witnesses heard two gunshots, which ballistics later indicated came from different guns. The two men then fled with the money.

¶3        Police first identified C.K. and Storm Collins as possible suspects. Police obtained cell phone records for Collins, which revealed contact with a phone number on the day of the murder, later identified as another co-defendant's phone number. This co-defendant's phone records, in turn, revealed he had been in contact with another phone number on the day of the murder, later identified as belonging to Conner.

¶4        In February 2013, police requested and obtained an ex parte court order to obtain Conner's cell phone records. The probable cause statement used for the order relied on the information from Collins' phone records to provide the factual basis for the request made pursuant to Arizona Revised Statutes (A.R.S.) section 13-1307 and 18 United States Code

---

[1] The Honorable Joshua Rogers, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution

(U.S.C.) section 2703 (2020).[2] The court found "probable cause that the communication service records . . . contain information concerning the criminal offenses of" first-degree murder and armed robbery, and issued the ex parte order pursuant to those statutes. The order, directed to T-Mobile (Conner's cell phone provider), specified the records sought: subscriber information, cell/call detail reports, text message records, data usage records, cell site and sector information, per call measurement data with switch information and the location and corresponding information of all cell towers involved. The order limited the timeframe for the records to December 2-15, 2012 and required that the information be produced within five days of issuance or service.

¶5 The police sent the order via facsimile to a named T-Mobile employee in New Jersey. Describing the order as a subpoena, T-Mobile responded in a one-page facsimile that provided subscriber information for Conner's phone number identified in the order. The information provided, however, did not include switch information for calls. The switch both captures information (such as the date, time and duration of a call) and relays it to the customer service system, thereby linking the transaction to the customer, and also routes the call to its destination. Switches are located around the country, so the switch used may be in a different time zone than where the call originated. In 2012, the time of calls captured in T-Mobile's records was based on the switch's time zone, not the location where the calls were made. In 2012, when the records were compiled, the calls were recorded in chronological order based on the time captured by the switch without consideration of the time zone where the call was made.

¶6 This lack of switch information complicated mapping and analysis of Conner's cell phone information. When mapping was based purely on T-Mobile's records, it appeared that several calls "did not seem to follow the natural logical point of the calls." This required the State's expert, Federal Bureau of Investigation Special Agent Young, to correlate and verify calls to and from Conner's phone by comparing the T-Mobile records to the records for the other defendants. These other defendants had different service providers with systems that did not contain the switch time ambiguity for Conner's account. Agent Young then adjusted the timestamps of some of Conner's calls to Arizona time based upon information in records obtained for the other defendants.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶7            Conner, C.K., Collins and two other co-defendants were arrested and charged with first-degree murder, a Class 1 dangerous felony (Count 1); conspiracy to commit armed robbery, a Class 2 dangerous felony (Count 2); and armed robbery, a Class 2 dangerous felony (Count 3).

¶8            After various pre-trial motions and a mistrial, a retrial was set for November 2018. Before the retrial began, Conner filed motions addressing (1) the ex parte order and (2) Agent Young's intended trial testimony. These motions challenged the State's primary evidence linking Conner to the robbery and murder.

¶9            Conner moved to suppress the cell site location information (CSLI) obtained from T-Mobile in 2013, based on *Carpenter v. United States*, 138 S. Ct. 2206 (2018). Conner argued that, under *Carpenter*, the police had violated his Fourth Amendment rights when they obtained his CSLI with a court order instead of a warrant. The court denied the motion after a brief hearing, noting the application and court order were based on probable cause, and the order was the functional equivalent of a warrant.

¶10           Conner also moved to preclude Agent Young from testifying about his analysis of the phone records under Arizona Rules of Evidence 702 and 704. After a partial pre-trial evidentiary hearing, which included some testimony and evidence but was not completed, the court preliminarily allowed Agent Young's testimony. After a status conference, the court denied Conner's request to complete the evidentiary hearing, leaving intact the ruling allowing Agent Young to testify.

¶11           Conner and two co-defendants were tried together. After 29 days of trial, the jury convicted Conner of first-degree murder and armed robbery, finding him not guilty of conspiracy to commit armed robbery. Conner was sentenced to life in prison with the possibility of release after 25 years for murder, and a concurrent ten-and-a-half-year prison term for armed robbery, with 1,871 days of presentence credit.

¶12           This court has jurisdiction over Conner's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033(A).

## DISCUSSION

¶13           Conner challenges the court's denial of his motion to suppress and denial of his motion to preclude Agent Young from testifying. The court addresses each of these arguments in turn.

I.     **Conner Has Not Shown the Court Erred in Denying His Motion to Suppress.**

¶14          Conner argues his CSLI should have been suppressed under *Carpenter v. United States*, which held the acquisition of historical CSLI was a search under the Fourth Amendment, generally requiring a warrant supported by probable cause. 138 S. Ct. at 2221. This court reviews "rulings on motions to suppress for abuse of discretion," *State v. Primous*, 242 Ariz. 221, 223 ¶ 10 (2017), reviewing legal conclusions de novo, *State v. Peterson*, 228 Ariz. 405, 408 ¶ 6 (App. 2011).

¶15          Generally, "[n]ew constitutional rules apply to cases on direct review." *State v. Towery*, 204 Ariz. 386, 389 ¶ 6 (2003) (citing *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987)). The United States Supreme Court has instructed the courts "to apply the new rule[s] retroactively to cases not yet final." *Griffith*, 479 U.S. at 323. At the time *Carpenter* issued, Conner was awaiting trial. Accordingly, because Conner's case was not yet final, *Carpenter* applies. *See Griffith*, 479 U.S. at 323; *Towery*, 204 Ariz. at 389 ¶ 6.

¶16          *Carpenter* held the State generally must obtain a search warrant based on probable cause to obtain historical CSLI. 138 S. Ct. at 2221. In this case, the State did not obtain a warrant but instead obtained an ex parte court order that issued based on probable cause after a judicial officer reviewed an application supported by a probable cause statement. The State argues that, because the order was based on and supported by probable cause, no Fourth Amendment violation occurred. Whether Conner's CSLI should have been suppressed turns on whether the substantive requirements of a warrant were satisfied by the court order.

¶17          Under the Fourth Amendment, a search warrant may only issue upon probable cause. *Frimmel v. Sanders*, 236 Ariz. 232, 239 ¶ 26 (App. 2014). "Probable cause exists when the facts known to a police officer would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *State v. Sisco*, 239 Ariz. 532, 535 ¶ 8 (2016) (quotation omitted). A neutral, detached magistrate determines the existence of probable cause. *Frimmel*, 236 Ariz. at 239 ¶ 26; *see also* A.R.S. § 13-3915(A). The affidavit seeking a search warrant also must name or describe "the person and particularly describing the property to be seized and the place to be searched." A.R.S. § 13-3913.

¶18          Conner contends the ex parte order failed to meet the requirements of a search warrant. Specifically, he claims the order "failed to describe the place to be searched and the items to be seized. It failed to

include a return of search warrant as well as a specific time in which to conduct the search. Additionally, it lacked the specificity of the [items] to be seized as required under the law." A review of the order, however, shows otherwise.

**¶19** The order identified the specific phone number for which records were sought. It listed the types of records sought: subscriber information, cell/call detail reports, text message records, data usage records, cell site and sector information records, per call measurement data including the switch identifier information and "the location and all corresponding information of all cell towers associated with the requested information." The order limited the records to December 2-15, 2012 and directed compliance within five days of issuance or service. Although the order lacked a specific return date and time, that alone does not require suppression of Conner's cell phone records. *See* A.R.S. § 13-3925(A) ("Any evidence that is seized pursuant to a search warrant shall not be suppressed as a result of a violation of this chapter . . . .").

**¶20** Although the State concedes the order was not a search warrant, Conner has not shown how the order was *substantively* different from a search warrant. The order was issued after a judge reviewed the detective's affidavit, which set forth probable cause. The order issued based on a probable cause finding and identified the places and items to be searched and seized.

**¶21** Conner argues the order was not supported by probable cause because it was issued pursuant to the Stored Communications Act, 18 U.S.C. § 2703, which *Carpenter* found was "a 'gigantic' departure from the probable cause rule." 138 S. Ct. at 2221. Section 2703 does not require probable cause but, instead, requires a showing of "reasonable grounds" for believing that records sought are "relevant and material to an ongoing investigation." *Id.* (quoting 18 U.S.C. § 2703(d)). Because Arizona's statute requires a similar showing as its federal counterpart, Conner argues if 18 U.S.C. § 2703 falls below the probable cause rule, then so does A.R.S. § 13-3017.

**¶22** Conner's argument, however, is based on the premise that the request was not based on probable cause, and that the order was not issued on a probable cause finding. The record, however, is to the contrary. The request for the order included a probable cause statement and the order issued based on a finding of probable cause. Although Conner's brief on appeal states the order lacked probable cause, Conner failed to explain how probable cause was lacking in arguments to the superior court. In fact,

Conner did not seek to explain how the order lacked probable cause until oral argument before this court. "Merely mentioning an argument in an appellate opening brief is insufficient." *MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011). Conner's failure to meaningfully argue this point until oral argument before this court constitutes waiver. *See id.* Accordingly, Conner has not shown the statutory basis for the request for the order and the issuance of the order itself are contrary to *Carpenter*'s probable cause requirement.

¶23 Conner argues the court lacked the jurisdiction to order T-Mobile to provide its records because the order was served in New Jersey, where the records were stored, not in Arizona. This argument ignores that Arizona state courts may compel the production of documents located outside the state's borders. *See Hegle v. Druke*, 136 Ariz. 434, 437 (App. 1983) (upholding a subpoena requiring production of documents located in California). Moreover, T-Mobile complied with the order without asserting any jurisdictional objection. On this record, Conner has not shown any jurisdictional issue that mandates suppression of the information obtained from T-Mobile.

¶24 The superior court found the ex parte order, while not technically a search warrant, substantially complied with the requirements of a search warrant and was issued based on probable cause. Moreover, Conner has failed to show how the probable cause statement or finding was inadequate. As a result, Conner has not shown the court erred in denying his motion to suppress.

## II. Conner Has Not Shown the Court Erred in Denying His Motion to Preclude Agent Young's Expert Testimony.

¶25 This court reviews a superior court's decision to admit expert testimony for an abuse of discretion. *State v. Bernstein*, 237 Ariz. 226, 228 ¶ 9 (2015); *State ex. rel. Montgomery v. Miller*, 234 Ariz. 289, 297 ¶ 15 (App. 2014). On appeal, Conner challenges the court's conclusion that Agent Young could testify as an expert under Rule 702. Conner also argues the court denied him an opportunity to thoroughly cross-examine Agent Young when the court ended the pre-trial hearing during counsel's cross-examination and denied Conner's request to complete the pre-trial evidentiary hearing.

¶26 Under Rule 702, the court serves as a "gatekeeper" and is directed to make "a preliminary assessment as to whether the proposed expert testimony is relevant and reliable." *Miller*, 234 Ariz. at 298 ¶ 19 (citing

Ariz. R. of Evid. 702, comment to 2012 amendment). The proponent of the expert "must prove, by a preponderance of the evidence, that the testimony is both relevant and reliable." *Id.* Although serving as a gatekeeper, the trial court does not replace the adversarial system. Ariz. R. of Evid. 702, comment to 2012 amendment. Instead, "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible [expert] evidence." *Miller*, 234 Ariz. at 298 ¶ 20 (quotation omitted).

¶**27**      Conner argues Agent Young's opinion was based on insufficient facts and data, and thus inadmissible under Rule 702. Specifically, he argues Agent Young lacked "a key for the T-Mobile [CSLI], Azimuth information, switch information, a key to a second set of [CSLI], and location information of the TracFone." Agent Young's trial testimony included explaining how he reached his conclusion and the opportunity for significant cross-examination by defendants. During that cross-examination, however, he was never asked about this information and was never asked about how any lack of information affected his opinions. More specifically, the cross-examination did not address how the missing Azimuth information or a key to either set of CSLI affected his opinions. Agent Young was briefly cross-examined on the switch issue but was most extensively cross-examined on the TracFone calls. At the September pre-trial hearing, the cross-examination of Agent Young addressed (albeit rather briefly) only the switch pooling issue. At no point, during the pre-trial hearing or at trial, did Conner challenge the quality of Agent Young's opinions because he lacked this other data.

¶**28**      Under Rule 702(b), the court evaluates whether an expert had sufficient facts or data. *Miller*, 234 Ariz. at 298 ¶ 22. This assessment is quantitative, not qualitative, and the superior court has substantial discretion in addressing the issue. *Id.* On this record, Conner has not shown that the facts and data available to Agent Young were so insufficient as to render his opinion inadmissible.

¶**29**      Under Rule 702(d), the court "consider[s] whether an expert reliably applied the pertinent methodology" to the facts of the case. *Bernstein*, 237 Ariz. at 229 ¶ 13. Conner asserts Agent Young's opinion "lacked the key element of being reliable." Conner notes that Agent Young was the State's third cell phone expert, and each expert had analyzed the same data and applied essentially the same methodology but had come to different conclusions. "[A]lleged flaws in the application of a reliable methodology should not result in exclusion of evidence unless they 'so infect[] the procedure as to make the results unreliable.'" *Id.* at 230 ¶ 17

(quoting *State v. Langill*, 945 A.2d 1, 10 (N.H. 2008)). Other than broadly claiming the State's experts came to different conclusions over time, Conner fails to show what flaws in Agent Young's work made his opinions unreliable. Mere differences in conclusions do not require the preclusion of expert evidence under Rule 702. *See* Ariz. R. Evid. 702, comment to 2012 amendment ("Where there is contradictory, but reliable, expert testimony, it is the province of the jury to determine the weight and credibility of the testimony.").

**¶30**        Conner argues that Agent Young adjusted the times of certain communications, apparently to account for time zone differences given the switching issue, but does not explain how that rendered his opinion unreliable. *See id.* Moreover, Agent Young told the jury that he had done so and was subject to cross-examination on the point. Conner claims that no error rate was specified and there is no general acceptance of Agent Young's technique in the relevant scientific community. However, the factors enumerated in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) are "non-exclusive factors for determining whether scientific evidence is admissible." *Sandretto v. Payson Healthcare Mgmt.*, 234 Ariz. 351, 356 ¶ 12 (App. 2014) (quotation omitted). Accordingly, the absence of some factors does not render an opinion inadmissible. This is particularly true for cell-phone expert testimony, which has generally been found admissible. *See, e.g.*, *State v. Warner*, 2020 WL 1696716 *1, *2-5 (S.C. App. 2020) (affirming admission of CSLI expert testimony and finding CSLI reliable); *State v. Adams*, 161 A. 3d 1182, 1195-96 (R.I. 2017) (affirming finding CSLI expert testimony was sound and reliable); *United States v. Pembrook*, 119 F. Supp. 3d 577, 596–99 (E.D. Mich. 2015) (finding CSLI testimony reliable and denying motion to preclude). Conner has failed to show Agent Young's testimony was so unreliable as to require exclusion.

**¶31**        Conner also argues the court erred by failing to complete the evidentiary hearing before determining Agent Young's testimony was admissible and the court should have allowed Conner to complete his cross-examination at that hearing. "Although a court has the discretion to hold a pre-trial evidentiary hearing to address admissibility under Arizona Rule of Evidence 702, such a hearing is *not mandatory*." *Glazer v. State*, 234 Ariz. 305, 315 ¶ 28 (App. 2014) (emphasis added), *vacated in part on other grounds*, 237 Ariz. 160, 168 ¶ 36 (2015). Moreover, Conner had the opportunity to cross-examine Agent Young at trial. *See* Ariz. R. Evid. 702, comment to 2012 amendment; *see also Daubert*, 509 U.S. at 596 (noting that vigorous cross-examination is the appropriate means of attacking shaky but admissible expert evidence). Therefore, Conner has not shown any error in

the pre-trial evidentiary proceedings leading to the admissibility of Agent Young's testimony.

## CONCLUSION

¶32        Conner's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA