NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER CLEMENTS, *Appellant.*

No. 1 CA-CR 22-0276

FILED 12-05-2023

Appeal from the Superior Court in Maricopa County
No.  CR2017-005669-001
The Honorable Frank W. Moskowitz, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Dawnese C. Hustad
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which
Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

_____

**T H U M M A**, Judge:

¶1 Defendant Christopher Clements appeals his convictions and
sentences for fraudulent schemes and artifices, burglary and theft.
Clements claims the superior court erred in denying his motion to suppress
evidence. Because he has shown no error, his convictions and sentences are
affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2 In October 2015, a couple was lured from their home by a call
from a blocked number. The caller claimed to work for FedEx and insisted
that the couple go to a nearby location, in person, and sign for a package.
When they did so, there was no package waiting for them. When they
returned home, their home had been burglarized and several unique
jewelry pieces were missing. Two weeks later, another couple was
burglarized in a similar fashion. They also received a call from someone
claiming to work for FedEx, were instructed to pick up a package in person,
there was no package waiting for them, and when they returned home, they
found their home had been burglarized and valuables had been stolen.

¶3 As part of an investigation by the Maricopa County Sheriff's
Office, detectives obtained the first couple's phone records. Those records
showed that the blocked call came from a prepaid (or "burner") T-Mobile
phone, which made several calls close to the scene on the date of the
burglary. The prepaid phone also made a call to the second couple.

¶4 In December 2015, based on a probable cause affidavit, law
enforcement applied for a court order to obtain cell site location information
(CSLI) for the prepaid phone, citing 18 U.S.C.A. § 2703 (the Act) and A.R.S.
§ 13-3017. Among other things, the application sought the prepaid phone's
global positioning statement (GPS) information and subscriber data. A
judge found probable cause had been shown and issued the requested
order. Law enforcement, however, received little subscriber data from T-
Mobile. So, law enforcement sought and obtained another probable cause

court order in January 2016. Because of a typographical error in the date ranges for this second request, law enforcement sought and obtained a third probable cause court order with amended dates. Law enforcement was then able to activate GPS tracking of the prepaid phone.

¶5        The GPS data led law enforcement to Clements' address, and law enforcement obtained a search warrant for the home. Executing the warrant, detectives found the prepaid phone inside a car parked in the driveway. Inside the home, they found "various tools and chemicals used to dissemble jewelry and grade authenticity and quality of precious stones," as well as a stone that resembled one of the unique jewelry pieces stolen in the October 2015 burglary.

¶6        The State charged Clements with fraudulent schemes and artifices, theft, and two counts of burglary. Clements moved to suppress the evidence arising out of the probable cause court orders, arguing the Sheriff's Office improperly obtained GPS data of the cell phone without a warrant. After an evidentiary hearing, the court denied Clements' motion. The court also noted that "law enforcement made appropriate good faith efforts to address and comply with [Clements'] Fourth Amendment rights." Following trial, a jury convicted Clements as charged.

¶7        This court has jurisdiction over Clements' timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2023).[1]

## DISCUSSION

¶8        In reviewing the denial of a motion to suppress, this court will review factual findings for an abuse of discretion while legal determinations are reviewed de novo. *State v. Jean*, 243 Ariz. 331, 334 ¶ 9 (2018) (citation omitted); *State v. Weakland*, 246 Ariz. 67, 69 ¶ 5 (2019). This court views the evidence presented at the suppression hearing in a light most favorable to sustaining the order. *State v. Butler*, 232 Ariz. 84, 87 ¶ 8 (2013). The appropriateness of applying the good faith exception to the exclusionary rule is a legal determination reviewed de novo. *See Weakland*, 246 Ariz. at 69 ¶ 5.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## I. The Court Orders Were the Functional Equivalent of a Search Warrant.

¶9  The events challenged by Clements on appeal -- the Sheriff's Office seeking and obtaining the probable cause orders and seizing evidence under those orders -- occurred in 2015 and 2016. In 2018, the United States Supreme Court found that obtaining CSLI is a search generally requiring a warrant. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018). Although *Carpenter* was decided after the events challenged in this case, "[n]ew constitutional rules" like those declared in *Carpenter* generally are applied "to cases on direct review." *State v. Towery*, 204 Ariz. 386, 389 ¶ 6 (2003) (citation omitted).

¶10  Clements argues that the Sheriff's Office unlawfully obtained CSLI under court orders rather than search warrants. According to Clements, law enforcement's request for "internet history, IP addresses, and GPS location information fell under the protection of the Fourth Amendment and required a warrant." Clements, however, fails to show how the probable cause court orders issued here "failed to meet the requirements of a search warrant." *State v. Conner*, 249 Ariz. 121, 124–25 ¶ 18 (App. 2020).

¶11  As the United States Supreme Court has repeatedly declared, a search warrant "require[s] only three things:"

> First, warrants must be issued by neutral, disinterested magistrates. *See, e.g., Connally v. Georgia*, 429 U.S. 245, 250-251 (1977) (*per curiam*); *Shadwick v. Tampa*, 407 U.S. 345, 350 (1972); *Coolidge v. New Hampshire*, 403 U. S. 443, 459-460 (1971). Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. *Warden v. Hayden*, 387 U.S. 294, 307 (1967). Finally, "warrants must particularly describe the 'things to be seized,'" as well as the place to be searched. *Stanford v. Texas*, [379 U.S. 476,] 485 [(1965)].

*Dalia v. United States*, 441 U.S. 238, 255 (1979).

¶12 On this record, the probable cause orders Clements challenges meet these three requirements. It is undisputed that a neutral, disinterested judge issued the probable cause orders. The orders were sought in an affidavit showing probable cause, and the court found "that the applicant has shown probable cause and that the information is relevant to an ongoing criminal investigation." Finally, Clements does not argue that the probable cause orders lacked particularity.

¶13 On appeal, Clements does not challenge the sufficiency of the probable cause finding or, other than in name, pinpoint any way the probable cause orders differ from warrants.[2] On this ground, Clements has not shown the superior court erred in denying his motion to suppress. *See Conner*, 249 Ariz. at 125 ¶ 20.

## II. The Good Faith Exception to the Exclusionary Rule.

¶14 Even if Clements were correct that, in substance, the probable cause orders differed from warrants, the evidence Clements sought to suppress was still admissible under the good faith exception to the exclusionary rule. By statute, investigators could obtain CSLI with a court order upon a showing that "there [were] reasonable grounds to believe . . . records or other information sought, [was] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(c)-(d). In 2018, however, *Carpenter* held that law enforcement must show probable cause -- rather than "reasonable grounds" -- to obtain CSLI.

¶15 "Courts have consistently applied the good-faith exception to CSLI orders issued prior to *Carpenter*." *State v. Smith*, 250 Ariz. 69, 81, ¶ 24 (2020); *see also United States v. Moore*, 634 F. Supp. 3d 683, 686 (D. Ariz. 2022) ("CSLI gathered under the [Act is] still admissible, albeit under the good-faith exception to the 4th Amendment's exclusionary rule"). "To avoid suppression, officers need only have reasonably relied in good-faith, under an objective standard, on some legal authority which was later deemed invalid. Such authority could be a statute or a warrant . . . or an order under the" Act. *Moore*, 634 F. Supp. 3d at 687. "Reliance upon [a Stored

---

[2] In the superior court, Clements appeared to challenge the timeliness of the execution of the probable cause orders, also arguing that the second and third probable cause orders "were simply reissued without a new probable cause statement at the time they were issued." The superior court rejected those arguments and Clements has not pressed that argument on appeal, meaning he has shown no error, let alone fundamental error resulting in prejudice. *See State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018).

Communications Act] order is analogous to the reliance upon warrants," subject to the good-faith exception to the exclusionary rule. *Id.*

**¶16** Here, the probable cause orders were sought and obtained on a showing (and finding) of probable cause, not reasonable grounds. Despite that fact, Clements argues that the good faith exception does not apply because the Arizona statute and the Act section cited in the probable cause court orders do not expressly allow for live GPS tracking. He also argues that the applications and court orders "flagrantly exceeded both statutory grants . . . [a]nd when [law enforcement] chose to couch [the] request *as if* it flowed from A.R.S. § 13-3017 and 18 U.S.C.A. § 2703, [they] misled the court."

**¶17** Contrary to Clements' argument, "[i]f a judge makes a mistake and grants an order without sufficient legal basis, exclusion cannot deter police misconduct as there is no misconduct to deter . . . swapping 'order' for 'warrant' does not change the analysis." *Moore*, 634 F. Supp. 3d at 687. Here, law enforcement applied for and obtained the probable cause orders authorizing them to seize the prepaid phone's GPS data. Detectives then relied on these probable cause orders when they seized the data. Particularly given that all this happened before the 2018 *Carpenter* decision, Clements has not shown the superior court erred in finding it was reasonable for detectives to rely on the probable cause orders.

**¶18** Clements has not shown that it was unreasonable for law enforcement to rely on the probable cause orders in this case. Thus, he has shown no error in admitting in evidence the data obtained under the probable cause orders under the good faith exception. On this record, Clements has not shown the court erred in denying his motion to suppress.

## CONCLUSION

**¶19** Clements' convictions and sentences are affirmed.

