NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Plaintiff/Appellee*,

*v.*

SONNY JAMES BIERBRODT, *Defendant/Appellant*.

No. 1 CA-CV 25-0195
FILED 11-19-2025

Appeal from the Superior Court in Mohave County
No. S8015CR202300700
The Honorable Billy K. Sipe, Judge

**AFFIRMED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Matthew J. Smith, Ryan H. Esplin
*Counsel for Plaintiff/Appellee*

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Veronika Fabian joined.

---

**M O R S E**, Judge:

¶1        Sonny James Bierbrodt appeals the superior court's order involuntarily committing him to a secured State mental-health facility. Bierbrodt challenges the superior court's jurisdiction, the expert testimony presented at his dangerousness trial, and the constitutionality of A.R.S. § ("Section") 13-4517. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In June of 2023, Bierbrodt took an energy drink from a grocery store without paying. A store manager followed Bierbrodt and asked him to return the beverage. Bierbrodt responded that "he had a knife and a gun and that he was willing to use [them]." The State charged Bierbrodt with armed robbery.

¶3        Bierbrodt pled not guilty and his counsel requested an Arizona Rule of Criminal Procedure ("Rule") 11 examination to determine his competency to stand trial. The superior court appointed Doctor Laurence Schiff ("Dr. Schiff") who submitted a report to the superior court opining that Bierbrodt was not competent to stand trial. After reviewing the report, both parties and the superior court agreed that Bierbrodt was not competent to stand trial. The superior court sent Bierbrodt to the Yavapai County Restoration to Competency Program to see if he could be restored to competency to stand trial. Bierbrodt began the program on February 2, 2024.

¶4        On March 15, 2024, the superior court received the Final Report of the Yavapai County Restoration to Competency Program. The superior court stated the Final Report considered Bierbrodt incompetent to stand trial and not restorable. The State indicated it wanted to proceed under Rule 11.5 and requested the superior court appoint a guardian ad litem for Bierbrodt. *See* Ariz. R. Crim. P. 11.5(b)(3); A.R.S. § 13-4517(A). The State also requested an evidentiary hearing. *See* A.R.S. § 13-4521(A). The

superior court appointed a guardian ad litem for Bierbrodt and scheduled an evidentiary hearing.

¶5        The superior court held an evidentiary hearing to "determine if the proof is evident or the presumption great that the defendant committed the act that constitutes a serious offense as defined in A.R.S. § 13-706." A.R.S. § 13-4521(A).  At the evidentiary hearing, the grocery store's manager testified that he confronted Bierbrodt when Bierbrodt left the store with an energy drink without paying.  The manager testified that during the confrontation, Bierbrodt said "he had a knife and a gun and that he was willing to use [them]."

¶6        The arresting police officer then testified.  The police officer testified that she and another police officer located Bierbrodt nearby with an energy drink and two knives on his person.  The superior court found that "proof is evident and the presumption great that [Bierbrodt] did commit a serious offense, specifically armed robbery."  The superior court then told the parties it would set a dangerousness trial and asked each party to nominate an expert to evaluate Bierbrodt.  The State nominated a psychologist.  Bierbrodt nominated Dr. Schiff.

¶7        Dr. Schiff submitted a psychiatric evaluation regarding Bierbrodt's dangerousness to the superior court.  The State's psychologist never submitted a dangerousness evaluation.  Bierbrodt challenged Dr. Schiff's report, arguing Dr. Schiff did not base the report on scientific conclusions and requested a *Daubert* hearing on the matter. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993).  The superior court agreed to set a *Daubert* hearing and then continued it to the day of the dangerousness trial.  The State filed a response opposing the *Daubert* hearing.

¶8        Bierbrodt's guardian ad litem determined Bierbrodt needed a guardian and petitioned the superior court to appoint one.  The superior court appointed the Mohave County Public Fiduciary to serve as Bierbrodt's guardian.  Bierbrodt then moved to dismiss his case under Section 13-4517(C) for lack of jurisdiction.  After hearing argument on the morning of trial, the superior court denied the motion to dismiss.  After reviewing the State's response and hearing argument, the superior court changed its mind and denied Bierbrodt's request for a *Daubert* hearing.

¶9        The superior court then held a bench trial to determine whether Bierbrodt was dangerous and should be committed. *See* A.R.S. § 13-4517(A)(4); A.R.S. § 13-4521(B).  The parties stipulated that the superior

court could consider any evidence already introduced at the earlier evidentiary hearing. The State called Dr. Schiff to testify. Dr. Schiff is a licensed medical doctor with 47 years' experience who mostly practices psychiatry and has no disciplinary record. He is a certified Rule 11 examiner in Arizona who has performed Rule 11 examinations and Title 36 evaluations in Arizona for over 22 years. He has extensive experience working in prisons and restoration to competency programs as a psychiatrist. Dr. Schiff testified he knew the dangerousness standard at issue in this case. He diagnosed Bierbrodt with "schizophrenia disorganized type." He stated that in examining Bierbrodt, he tried to "look at the entirety of the clinical picture" and evaluated Bierbrodt's behavior longitudinally. To do this, Dr. Schiff testified he relied on his personal experience from two past interviews with Bierbrodt, a conversation with Bierbrodt's father, the police report in this case, the restoration report in this case, reports about Bierbrodt's behavior from the jail where he lived while in custody, and an earlier Rule 11 examination report of Bierbrodt. Considering all this information, Dr. Schiff testified he believed Bierbrodt met the definition of dangerous. Neither the State nor Bierbrodt presented any other evidence at trial.

¶10            After the trial, the superior court issued an order finding that Bierbrodt "is dangerous and should be involuntarily committed to a secured State mental health facility." Bierbrodt timely appealed. We have jurisdiction under A.R.S. §§ 12-2101(A)(4), (A)(10)(a), and -120.21(A)(1).

## DISCUSSION

¶11            On appeal, Bierbrodt challenges the superior court's jurisdiction, the expert testimony presented at his dangerousness trial, and the constitutionality of Section 13-4517. We review the admission of evidence for an abuse of discretion. *State v. Haskie*, 242 Ariz. 582, 585, ¶ 11 (2017). We review questions of statutory interpretation de novo. *Albert L. v. Dep't of Child Safety*, 253 Ariz. 146, 149, ¶ 13 (App. 2022). We review the constitutionality of a statute de novo. *State v. Angulo-Chavez*, 247 Ariz. 255, 259, ¶ 11 (App. 2019). And we generally decline to consider an issue raised for the first time on appeal. *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000).

## I.      Jurisdiction Under Section 13-4517(C).

¶12            We interpret statutory language to give meaning to every word and provision, "considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019). Context

in statutory interpretation is essential to understand "the overall objective" of a statute, and to ensure no part of the statutory scheme is rendered superfluous. *Matter of Conservatorship of Chalmers*, --- Ariz. ---, --- ¶ 18, 571 P.3d 885, 889 (2025).

¶13      Bierbrodt argues that the superior court lost jurisdiction over him under Section 13-4517(C) when the superior court appointed a guardian for him under Section 13-4517(A)(2). Section 13-4517(C) provides that "[t]he court may retain jurisdiction over the defendant until the defendant is committed for treatment pursuant to § 13-4521 or title 36, chapter 5 or a guardian is appointed pursuant to title 14, chapter 5." A.R.S. § 13-4517(C). Although Bierbrodt's argument makes some sense when the provision is considered in isolation, when read in context, Section 13-4517 provides a grant of, not a limitation on, the superior court's authority.

¶14      "In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017). Notably, "*in pari materia* is a primary tool of interpretation and ambiguity is not a prerequisite to applying it." *State Farm Auto. Ins. Co. v. Orlando*, --- Ariz. ---, ---, ¶ 24, 569 P.3d 394, 399 (2025). Here, Section 13-4521(I), part of the same statutory scheme as Section 13-4517, requires the superior court to "retain jurisdiction over a defendant who is committed pursuant to this section until the court discharges the defendant from treatment." A.R.S. § 13-4521(I). If we adopted Bierbrodt's interpretation—that Section 13-4517(C) divests the superior court's jurisdiction upon commitment for treatment or the appointment of a guardian—then the superior court could not retain jurisdiction until discharge from treatment after a dangerousness trial under Section 13-4521(I) because it would be required to surrender jurisdiction when a defendant is committed after a dangerousness trial. "Courts read statutes in harmony to avoid leaving any provision superfluous, void, contradictory or insignificant." *State v. Serrato*, --- Ariz. ---, ---, ¶ 19, 568 P.3d 756, 761 (2024) (internal quotation omitted).

¶15      Additionally, the statute contemplates the superior court retaining jurisdiction over the defendant even after one of the events described in Section 13-4517(C) has taken place. For example, Section 13-4517(D) addresses scenarios where the superior court retains jurisdiction after remanding for a civil commitment proceeding under title 36, chapter 5. Similarly, Section 13-4517(E) addresses actions the superior court may take if a defendant is not ordered into treatment through a civil commitment proceeding if it has retained jurisdiction. Both these

provisions anticipate the superior court retaining jurisdiction even after it has taken one of the actions under Section 13-4517(A).

**¶16** Moreover, "the [procedural] rules and statutes 'should be harmonized wherever possible and read in conjunction with each other.'" *State v. Brearcliffe*, 254 Ariz. 579, 585, ¶ 22 (2023) (quoting *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7 (2007)). The Rules also support this interpretation of Section 13-4517(C). Rule 11.5(b)(3)(A) provides that if a defendant is incompetent and not restorable to competency, "the court may on request of the examined defendant or the State do *one or more of* the following." Ariz. R. Crim. P. 11.5(b)(3)(A) (emphasis added). The list in Rule 11.5(b)(3)(A) includes the options in Section 13-4517(A). If the superior court loses jurisdiction under Section 13-4517(C) after any action under Section 13-4517(A), it could not do "one or more" of the following. Adopting Bierbrodt's interpretation of Section 13-4517(C) would contradict Rule 11.5(b)(3)(A). But reading Section 13-4517(C) as providing alternative, but not exclusive, jurisdictional grants harmonizes the statute and the rule.

**¶17** Based on all of these interpretive tools, we conclude that the statutory context and language of Section 13-4517(C) demonstrate it does not divest the superior court of jurisdiction after any one condition is met. But the court may retain jurisdiction to pursue multiple options under Section 13-4517(A). The superior court retained jurisdiction over Bierbrodt even after the superior court appointed a guardian for him.

## II.    Admission of Expert Testimony.

**¶18** Bierbrodt argues the superior court erred in the way it handled the expert testimony in this case. Section 13-4521(C) provides that "[t]he Arizona rules of evidence and the Arizona rules of civil procedure apply to proceedings held pursuant to this section." A.R.S. § 13-4521(C). Bierbrodt argues the superior court abused its discretion by refusing to hold a *Daubert* hearing. He also contends that Dr. Schiff's testimony violated Arizona Rule of Evidence 702, because the State did not offer evidence at trial about three of the factors courts use to determine if expert testimony is reliable. *See Daubert*, 509 U.S. at 593–94.

**¶19** When considering expert testimony, the superior court, "[p]articularly in a bench trial[,] . . . may decide to hear the evidence and objections to it and rule on its admissibility without conducting a separate hearing." *Arizona State Hosp./Arizona Cmty. Prot. & Treatment Ctr. v. Klein*, 231 Ariz. 467, 474, ¶ 31 (App. 2013). Bierbrodt has not established any

reason the superior court abused its discretion in declining to hold a separate *Daubert* hearing to consider admissibility.

**¶20** Rule 702 requires the court to act as a gatekeeper to ensure that expert testimony is reliable. *Id.* There are several non-exclusive *Daubert* factors courts consider which help determine if expert testimony is reliable. *Id.* at 473, ¶ 27. However, "[n]o single *Daubert* factor is dispositive of the reliability of an expert's testimony, and not all of the *Daubert* factors will apply to 'all experts or in every case.'" *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 299, ¶ 25 (App. 2014) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999)). Even without evidence addressing some of the *Daubert* factors, the State presented sufficient evidence for the superior court to find Dr. Schiff's testimony reliable and admissible.

**¶21** Dr. Schiff testified at length about his qualifications and method. *See supra* ¶ 9. The court could determine that Dr. Schiff's testimony met the requirements of Rule 702. *Cf. State v. Connor*, 249 Ariz. 121, 126, ¶¶ 25–31 (App. 2020) (affirming the admission of expert testimony when the State failed to establish some *Daubert* factors but had other sufficient indicators of reliability). Bierbrodt has not established the superior court abused its discretion by admitting Dr. Schiff's testimony.

## III. Constitutional Issues.

**¶22** Bierbrodt failed to raise his constitutional challenges before the superior court. We generally do not review issues, including constitutional issues, brought for the first time on appeal. *Englert*, 199 Ariz. at 26, ¶ 13. Even if these claims were properly raised, Bierbrodt would not prevail.

**¶23** Bierbrodt asserts that Section 13-4517 is an ex post facto law and that it violates his rights as a criminal defendant under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. However, our supreme court recently recognized that the proceedings under Section 13-4517 are civil, not criminal in nature. *Carson v. Gentry*, --- Ariz. ---, ---, ¶ 86, 574 P.3d 205, 223 (2025). Thus, Bierbrodt's Fifth, Sixth, and Fourteenth Amendment rights as a criminal defendant are not implicated, and Section 13-4517 is not a prohibited ex post facto law.

**¶24** Bierbrodt also asserts that Section 13-4517 violates his due-process and equal-protection rights. In *In re Leon G.*, the supreme court held that the procedures and evidentiary standards for an involuntary commitment under Arizona's Sexually Violent Person's Act met the constitutional requirements for procedural due process. 204 Ariz. 15, 20, ¶

15 (2002). The procedures at issue here are nearly identical. *Compare* A.R.S. §§ 36-3701–3707 *with* A.R.S. §§ 13-4517, 4521. These safeguards satisfy due process.

**¶25**     Bierbrodt argues Section 13-4517 violates his equal-protection rights by treating him differently than competent criminal defendants. Bierbrodt's equal-protection claim is reviewed under the rational-basis test. *See Martin v. Reinstein*, 195 Ariz. 293, 310, ¶ 53 (App. 1999) (explaining the rational-basis test is applied to equal-protection claims in civil commitment cases). The State has a legitimate government purpose in treating Bierbrodt differently from a competent defendant because the State is constitutionally obligated to protect his rights. *See Medina v. California*, 505 U.S. 437, 439 (1992) ("It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.") Bierbrodt's equal-protection claim fails.

## CONCLUSION

**¶26**     We affirm.

